SENTENCIA (En reconsideración)
I — 1
El viernes 24 de octubre de 2008 la Autoridad de Carre-teras y Transportación (Autoridad) celebró la Subasta Formal Núm. P-09-09 (Subasta) para la construcción de una intersección a desnivel entre las Carreteras PR-17 y PR-181 (Proyecto AC-001736). En esta se leyeron en voz alta *464 las propuestas recibidas y se señalaron los errores y las informalidades cometidas por algunos de los licitadores. Sobre el particular, en el Acta de Recepción de la Subasta se consignó que L.RC. & D., Inc. (LPCD o la recurrida) no había incluido la cantidad de cubierta de la fianza en el “Bid Bond”, por lo que la Junta de Subastas (Junta) le concedió tres días calendario, es decir, hasta las dos de la tarde del lunes 27 de octubre de 2008, para que reempla-zara el mismo.([1]) Efectivamente, el 27 de octubre de 2008 LPCD sometió la fianza de licitación solicitada.
El 20 de noviembre de 2008, la Junta emitió un Acta de Adjudicación en la que manifestó que, luego de haber ana-lizado las propuestas sometidas, recomendaba la adjudica-ción de la subasta a LPCD, postor más bajo que había cum-plido con todas las especificaciones.([2]) Dicha Acta de Adjudicación fue aprobada por el Director Ejecutivo de la Autoridad el 24 de noviembre de 2008.
Así las cosas, el 12 de diciembre de 2008 la Autoridad y LPCD firmaron el contrato para la construcción del Pro-yecto AC-001736. Ese mismo día se emitió la Orden de Co-mienzo, donde se advertía a la recurrida que la construc-ción del proyecto debía iniciarse no más tarde de diez días calendarios a partir de la fecha de ese documento.
CD Builders, Inc. (CD Builders), compañía que presentó la segunda propuesta más baja, no estuvo conforme con la determinación de la Autoridad de adjudicar la Subasta a LPCD. Por esto, el 15 de diciembre de 2008 presentó un recurso de revisión judicial ante el Tribunal de Apelaciones (TA) bajo el fundamento de que el defecto cometido por LPCD, de no incluir una fianza equivalente al cinco por *465 ciento, no era subsanable. El TA acogió una moción en auxilio de jurisdicción, presentada junto con el recurso de revisión judicial, y ordenó la paralización de todo procedi-miento de contratación relacionado con la subasta hasta tanto resolviera el recurso.([3]
El foro apelativo intermedio sostuvo mediante Senten-cia de 30 de enero de 2009 que el no incluir la cantidad correspondiente en el documento de fianza constituyó un defecto subsanable, por lo que confirmó la decisión del Director Ejecutivo de la Autoridad de adjudicar la Subasta a LPCD.
CD Builders acudió en revisión de dicha determinación ante este Foro mediante una petición de certiorari y una moción en auxilio de nuestra jurisdicción. Luego de orde-nar la paralización del Proyecto AC-001736,([4]) emitimos la opinión Aut. Carreteras v. CD Builders, Inc., 177 D.PR. 398 (2009), en la cual sostuvimos que “la omisión de incluir la suma afianzada en el documento de fianza no constituyó un mero tecnicismo o informalidad sino un defecto sustan-cial pues impedía considerar el documento de fianza pre-sentado por L.P.C.D. como una garantía de proposición aceptable”. Id., pág. 414. Resolvimos, en consecuencia, que procedía descalificar la propuesta de LPCD. Por lo tanto, revocamos la Sentencia del TA y devolvimos el caso al foro administrativo para que la Autoridad continuara el pro-ceso de la subasta en conformidad con lo establecido en la ley de la Autoridad y en su reglamento sobre Subastas.
*466 A la luz de nuestra decisión, el 20 de noviembre de 2009 la Autoridad, mediante la Resolución en Cumplimiento de Orden del Tribunal Supremo, concluyó que LPCD no era elegible para recibir la buena pro de la subasta por no ha-ber incluido una garantía de proposición aceptable en con-junto con su propuesta y, por lo tanto, el contrato estable-cido con esta había sido suscrito en violación de la ley. Determinó, entonces, que dicho contrato era inexistente o nulo ab initio. Resolvió, además, que al suscribirse el con-trato entre LPCD y la Autoridad sin haber transcurrido los términos para solicitar una reconsideración o revisión judicial, la recurrida conocía del riesgo de ser descalificada como licitadora; por consiguiente, cualquier daño sufrido fue “auto infligido y cualquier gasto desembolsado, a su costo”. La Autoridad decretó, además, la anulación de la subasta por recomendación de la Junta.([5])
Inconforme con la antedicha Resolución de la Autoridad, la recurrida presentó una solicitud de reconsideración ante el Director Ejecutivo de la Autoridad y ante la Junta. Re-conoció que la Autoridad poseía la facultad de anular su-bastas, tal y como lo había hecho en el caso de autos. Sin embargo, sostuvo que dicha agencia había actuado ilegal-mente y de forma ultra vires al adjudicar los derechos con-tractuales que cobijaban a LPCD en el contrato suscrito con éstos. Específicamente, argumentó que “[l]a controver-sia sobre los derechos de LPCD contra la ACT como resul-tado del otorgamiento del contrato y los gastos incurridos por ésta es una controversia que deberá ser resuelta en un tribunal y no por la vía administrativa”. Apéndice de la Solicitud para la expedición de auto de certiorari, pág. 68. La Autoridad declaró “sin lugar” la solicitud de reconside-ración mediante una Resolución emitida a esos efectos el 2 de diciembre de 2009.
LPCD recurrió, entonces, al TA dentro del término dis- *467 puesto en la Ley de Procedimiento Administrativo Uni-forme, 3 L.P.R.A. see. 2172, mediante un recurso de revi-sión judicial. Sostuvo que la actuación de la Autoridad al adjudicar los derechos contractuales de LPCD era ultra vi-res y nula, dado que dicha facultad adjudicativa no le fue delegada mediante legislación. ([6]) El TA dictó Sentencia el 12 de julio de 2010, notificada y archivada en autos el próximo día 14, revocando la Resolución recurrida. Con-cluyó que, aunque la Autoridad tenía facultad en ley para anular el proceso de subasta, dicha facultad no la autori-zaba a anular el contrato suscrito con LPCD y a adjudicar derechos que surgieran a raíz de este.([7])
La Autoridad recurrió de este dictamen ante nos me-diante una petición de certiorari, planteando como único señalamiento de error el siguiente:
ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMI-NAR QUE LA ACT ACTUÓ ULTRA VIRES AL CANCELAR SU CONTRATO CON LPCD PARA LA SUBASTA P-0909, EN VIRTUD DE QUE EL REFERIDO CONTRATO ES NULO AS INITIO, CONFORME A LO RESUELTO POR ESTE HONORABLE TRIBUNAL EN EL CASO CD BUILDERS V. AUTO- *468 RIDAD BE CARRETERAS, 2009 T.S.P.R. 164. Solicitud para la expedición de auto de certiorari, pág. 8.
En apoyo al recurso, la Autoridad alegó que su determi-nación de 20 de noviembre de 2009 no fue arbitraria, ca-prichosa ni irrazonable, sino que fue tomada dentro del marco de discreción y flexibilidad que le concede su ley habilitadora y su reglamento para subastas. Adujo que, en virtud de nuestra decisión en Aut. Carreteras v. CD Builders, Inc., supra, que dispuso que procedía descalificar la propuesta de la recurrida por no incluir una garantía de proposición aceptable, “el contrato suscrito entre la ACT y LPCD nunca existió ni creó relación jurídica alguna entre las partes”. (Énfasis en el original suprimido y énfasis suplido). Solicitud para la expedición de auto de certiorari, pág. 9. La Autoridad destacó que cuando adjudicó la buena pro a LPCD actuó en contravención a su reglamento para subastas y a las condiciones generales de contratación, es decir, contrario a la ley, por lo que el contrato celebrado con LPCD era completamente nulo.
Luego de conceder a los recurridos un término para que mostraran causa por la cual no se debía revocar la Senten-cia dictada por el TA y de otros trámites procesales, inclu-yendo la admisión como amicus curiae de la Asociación de Contratistas Generales de Puerto Rico (Asociación de Con-tratistas), el 30 de junio de 2011 dictamos Sentencia, expi-diendo el auto de certiorari y revocando el fallo emitido por el foro apelativo intermedio. Mediante dicho dictamen, se reinstaló la Resolución en Cumplimiento de Orden del Tribunal Supremo emitida por la Autoridad el 20 de noviem-bre de 2009.
En aquel momento basamos nuestra determinación en la doctrina firmemente establecida en nuestro sistema de derecho de conceder deferencia a las determinaciones de las agencias administrativas. Acudimos, de la misma forma, a la norma de nulidad de los actos realizados contra la ley dispuesta en el Art. 4 de nuestro Código Civil, 31 *469 L.P.R.A. sec. 4, y a lo resuelto anteriormente por esta Curia, relativo a que en la contratación pública todo pacto entre una parte privada y una agencia, en el cual no se siga el trámite dispuesto en ley, es nulo. De ese modo, con-firmamos la conclusión a la que había llegado la Autoridad de que el contrato suscrito entre ésta y la recurrida es nulo ab initio por haberse perfeccionado contra lo dispuesto en la ley.
El 15 de julio de 2011 LPCD y la Asociación de Contra-tistas comparecieron a este Foro mediante Moción Con-junta de Reconsideración. Argumentaron que, mediante la Resolución de la Autoridad de 20 de noviembre de 2009, ésta se enriquece injustamente —mientras LPCD sufre una disminución en su patrimonio— por actuaciones que le son imputables únicamente a la Autoridad. Específica-mente, LPCD aludió al hecho de que fue la propia Autori-dad quien le requirió comparecer y firmar el contrato de construcción y sostuvo que, de no hacerlo, se exponía a que se le ejecutara la fianza de licitación y a que la removieran del registro de licitadores. Añadió asimismo que la Autori-dad, además, dio la orden de comenzar las labores de cons-trucción bajo el apercibimiento de penalidades y multas.
Posteriormente, el Gobierno de Puerto Rico (Gobierno) también solicitó intervenir como amicus curiae. Acto se-guido, presentó un escrito de reconsideración de nuestra Sentencia de 30 de junio de 2011 basado en consideracio-nes de alto interés público y en las consecuencias y efectos negativos que dicha Sentencia podría tener sobre la con-tratación gubernamental en Puerto Rico.([8]) El 22 de julio de 2011 la Autoridad sometió una moción, allanándose a la solicitud de reconsideración del Gobierno.
*470 Mediante una Resolución emitida el 7 de octubre de 2011, declaramos “ha lugar” la intervención del Gobierno como amicus curiae. No obstante, proveimos “no ha lugar” a la solicitud de reconsideración conjunta de LPCD y de la Asociación de Contratistas, y a la presentada por el Gobierno y, posteriormente, por la Autoridad.
Luego de los múltiples trámites procesales antes desglo-sados, finalmente el 25 de octubre de 2011 todas las partes en el pleito, incluyendo aquellos que intervinieron como amicii curiae —es decir, el Gobierno y la Asociación de Contratistas— acudieron conjuntamente ante nos solici-tando la reconsideración de nuestra Sentencia de 30 de junio de 2011. En ésta reclamaron que motivos de alto in-terés público hacían meritorio que decretáramos la validez del contrato suscrito entre LPCD y la Autoridad.
Evaluada dicha comparecencia conjunta, concedimos un término de veinte días a todas las partes para expresar por qué no se debía dejar sin efecto nuestro dictamen por aca-demicidad([9]) dado el hecho de que la Autoridad anuló la subasta en cuestión debido a la falta de fondos públicos.
Las partes han acudido ante nos en cumplimiento con la Resolución emitida. Todas se oponen a que el caso se re-suelva por academicidad. En mociones por separado, las partes han argumentado que la controversia no se ha tornado académica porque todavía subsiste la interrogante relativa a si la Autoridad tiene que pagarle a LPCD por los trabajos realizados según el contrato suscrito entre éstas. Aluden, además, al hecho de que el caso involucra asuntos que se presentan con frecuencia en la contratación pública, por lo que puede recurrir. Evaluados estos argumentos, procedemos a resolver.
*471 II

J usticiabilidad

Es premisa firmemente establecida en nuestro ordena-miento jurídico que los tribunales tenemos que velar celo-samente por nuestra jurisdicción. Conforme a dicho princi-pio y a la doctrina de justiciabilidad, los tribunales limitamos nuestra intervención a aquellos casos que pre-senten controversias reales y definidas donde se “afectan las relaciones jurídicas de partes antagónicas u opuestas”. Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 981 (2011).
La doctrina de justiciabilidad establece como requisito para el ejercicio válido del poder judicial que exista un caso o controversia real surgida entre partes opuestas, las cuales acuden al tribunal en busca de un remedio que pueda afectar sus relaciones jurídicas. Asoc. Alcaldes v. Contralor, 176 D.P.R. 150, 157 — 158 (2009). Dentro del concepto de justiciabilidad, los tribunales evaluamos, además, que la controversia esté aún latente cuando se someta a nuestra consideración y que continúe viva a través de todo el proceso. Esto es lo que en derecho se conoce como la “doctrina de academicidad”. “La academicidad recoge la situación en que, arm cumplidos todos los criterios de justiciabilidad, ocurren cambios en los hechos o el derecho durante el trámite judicial que tornan académica o ficticia la solu-ción del caso”. Torres Santiago v. Depto. Justicia, supra, pág. 982. Además, “[a]l evaluar esta doctrina hay que con-centrarse en la relación existente entre los eventos pasa-dos que dieron inicio al pleito y la adversidad presente’ ”. íd., citando a U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 281 (2010). “Es decir, debemos evaluar los eventos anteriores, próximos y futuros para determinar si la controversia entre las partes sigue viva y subsiste con el tiempo”. Torres Santiago v. Depto. Justicia, supra, págs. 982-983.
*472 Teniendo dichos principios en mente y con miras a ase-gurar el uso adecuado y efectivo de los recursos judiciales, los tribunales debemos desestimar los casos por academi-cidad cuando los hechos o el derecho que les aplique han variado de tal forma que ya no existe una controversia vigente entre las partes adversas. Moreno v. Pres. U.P.R. II, 178 D.P.R. 969, 974 (2010).
III
En los últimos incidentes procesales del caso de autos, todas las partes han comparecido conjuntamente solici-tando la concesión del mismo remedio. Véanse las páginas 9 y 10 de esta Sentencia. Sin embargo, no cabe duda de que el asunto ha perdido el carácter de adversidad y de intere-ses jurídicos antagónicos, característica imprescindible para que sea considerado como justiciable. La interrogante acerca de si procede que la Autoridad pague alguna suma de dinero a LPCD es, en realidad, otra controversia que no es objeto de esta litigación. En cualquier circunstancia, se-ría objeto de otro caso, y no de este.
En esta etapa de los procedimientos, no tenemos ya un caso o controversia justiciable que amerite nuestra intervención. La controversia planteada en este caso, ade-más, se ha tornado académica por la falta de fondos públi-cos para llevar a cabo las obras de construcción, por lo que no es capaz de recurrir. Por consiguiente, reconsideramos nuestra Sentencia de 30 de junio de 2011 y la dejamos sin efecto. Del mismo modo y conforme a lo expresado en Moreno v. Pres. U.P.R. II, supra, págs. 974-975,([10]) dejamos sin efecto la Sentencia dictada por el Tribunal de Apelaciones el 12 de julio de 2010. Corresponde a la Autoridad atender aquellos asuntos que pudieran quedar pendientes den-tro del marco de su jurisdicción.
*473 Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Den-ton disintió con una opinión escrita, a la que se unió la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Aso-ciada Señora Fiol Matta disintió sin opinión escrita.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

— O —

(1) En el Aviso de Subasta publicado por la Junta se había especificado: “Toda propuesta deberá venir acompañada de una fianza provisional equivalente al cinco por ciento (5%) de la propuesta y sujeto a las condiciones que se expresan en el Artículo 102.08 de las Condiciones Generales ...”. Apéndice de la Solicitud para la expedición del auto de certiorari, pág. 1.

(2) La proposición sometida por LPCD y aceptada por la Autoridad ascendía a $25,733,830.

(3) Es menester señalar que desde la fecha cuando la Autoridad expidió la Orden de Comienzo hasta la notificación de la Orden de Paralización del TA, LPCD había realizado “labores misceláneas menores en el Proyecto AC-001736 ... tales como la instalación del rótulo de identificación del proyecto e instalación de módulos temporeros”.

(4) Según surge de la Resolución en Cumplimiento de Orden del Tribunal Supremo emitida por la Autoridad el 20 de noviembre de 2009:
“18. La única actividad realizada por LPCD desde el 10 de febrero de 2009, fecha en que se queda sin efecto la orden de paralización del Tribunal de Apelaciones, hasta el 24 de febrero de 2009, fecha en que la ACT emite la orden formal de para-lización, fue la entrega a la ACT del itinerario de trabajo (‘Progress Schedule’) ...”. Apéndice de la Solicitud para la expedición de auto de certiorari, pág. 59.

(5) La Junta recomendó la anulación de la subasta debido a la falta de fondos disponibles para las obras de construcción.

(6) LPCD planteó como único señalamiento de error el siguiente:
“Erró la Junta de Subastas de la Autoridad al pretender adjudicar en su Reso-lución derechos sustantivos que le asisten a LPCD como resultado de la cancelación del contrato habido entre las partes, la Orden de Comienzo y la de paralización de los trabajos (“stop work order”). La única función delegada por legislación a la Autori-dad, en el asunto que nos ocupa, lo es la de adjudicar o no la buena pro de la subasta y anular la misma como lo ha decidido. La Autoridad no tiene facultad delegada en ley para autoproclamarse juez y parte en la posible reclamación que pudiera tener LPCD contra ésta como resultado de la cancelación del contrato habido entre las partes y adjudicar la misma de antemano, sin que se le haya sido aún ni siquiera formulada, haciendo determinaciones de hecho sin vista y sin haber escuchado la prueba. La Resolución de la Autoridad pretende adjudicar unos hechos y el derecho de LPCD. La acción de la Autoridad es lo que se conoce en el idioma [i]nglés como un “preventive strike"!.] Al no tratarse lo resuelto en la Resolución en cuanto a los derechos de LPCD de materia que requiera el expertise de la Autoridad, sino que se trata de una adjudicación de cuestiones de derecho, la Resolución, en cuanto a dicho asunto, puede ser revisada en todos sus aspectos y debe ser revocada en cuanto a lo resuelto respecto a LPCD”. Apéndice de la Solicitud para la expedición de auto de certiorari, pág. 48.

(7) La Autoridad presentó una Moción de Reconsideración de la determinación del TA, sin embargo, este foro la declaró “no ha lugar” mediante una Resolución emitida el 6 de agosto de 2010.

(8) En específico, se refería a la paralización de las obras del Gobierno, en aquellos casos en los cuales las subastas para adjudicar la construcción de las obras hayan sido impugnadas hasta tanto el tribunal haya emitido una sentencia final y firme. Asimismo, se refirió a la consecuente dilación en la construcción de obras y servicios del Gobierno y al aumento en los costos de construcción como consecuencia del nuevo riesgo que asumirían los contratistas.

(9) Resolución de este Tribunal de 18 de noviembre de 2011.

(10) Véase, además, Berberena v. Echegoyen, 128 D.P.R. 864, 870 esc. 2 (1991).